The next matter number 25-1993 Jonathan Hernandez Zorilla et al. versus the Financial Oversight and Management Board. At this time would counsel for the appellant please introduce himself on the record to begin. Good morning Your Honors. May it please the court my name is Lucas Kowalczyk I represent the Financial Oversight and Management Board for Puerto Rico. May I please reserve two minutes for rebuttal? You may. Thank you. The Title III Court ruled that plaintiffs can evade the discharge of the Commonwealth's debts simply by suing Commonwealth officials in their personal capacities. That is fundamentally unfair to the Commonwealth's other creditors whose claims have been discharged and it defeats the purpose of this restructuring which was supposed to give the Commonwealth a fresh start. Under the decision below the Commonwealth could end up paying hundreds of millions of dollars in defending and indemnifying its officials for acts those officials took in the course of their public duties. The lawsuits here are nominally asserted against the officials in their personal capacities but they are functionally claims against the Commonwealth itself. That is what this court recognized in Salgado. There this court held that a claim asserted against Commonwealth officials in their personal capacity may be an indirect claim against the Commonwealth. That is the same issue that drives this appeal and that is why Salgado controls here. That case provided a functional test that turns on economic reality and economic consequences for the debtor to determine when personal capacity claims qualify as indirect claims against the Commonwealth and that test is satisfied here as the other side does not dispute. So in Salgado we were I believe we the words for purposes of the stay provision. That's right. The discharge provision is in the statute is not identical and additionally the mere fact that a stay was issued with respect to a claim does not mean that the claim has to be discharged under the plan. Okay so a few points on that your honor. First I don't think that Salgado announced a stay specific rule. Yes it can it relied on section 922A1 which is an automatic stay provision but which asks whether an action against an officer seeks to enforce a claim against a debtor and then the court decided that case by construing what it means to assert a claim against a debtor under section 1015. The court said that an action can enforce a claim against a debtor even if it does so indirectly by suing officials in their personal capacity and the fact that the court in Salgado then plugged that construction into 922A1 the automatic stay provision is irrelevant because the term claim has to carry the same consistent meaning throughout the entirety of the bankruptcy code. So if something is a claim for the purpose of one provision it has to be a claim for the purpose of other provision. Are you saying that this isn't a claim against the named defendants? It is a claim against the named defendants and an indirect claim against the commonwealth because of the economic consequences in the reality that the commonwealth is stepping in to pay for this defense and will step in to indemnify its own officials. So if it's a claim against the defendants then it's a third-party claim because it's effectively... Well the defendants aren't the debtor. That's right. And the plaintiff is a creditor of the defendants. That sounds like a third-party claim. No the the confirmation order specifies that it reaches claims against officials and employees so those words have to do some work. But it doesn't limit what their capacity... there's a missing phrase after that in terms of whether it's capacity and we have the judge who entered those orders interpreting it for us. Why would we run from that interpretation? Because those two words are not qualified in the confirmation order. The capacity limitation is essentially language that the court below added to it. Those terms are not ambiguous. They refer to persons. They don't refer to capacity limitations. The capacity limitations could have been written into the text. But in the discharge itself we're looking at personal liabilities of the debtor. Well the language personal liability of the debtor comes from section 524 which I don't think has any role in this appeal and I'm happy to explain why. It's essentially mixing up three steps of the analysis. The first is whether something is a claim. That's section 1015. Step two is what is the scope of discharge. That's section 944. Step three is what is the effect of discharge. That's when section 524 comes in. Section 524 lives at step three. This appeal is about step one. Whether this is or isn't a claim and the language personal liability of the debtor is not in the definition of claim. Claim is a right to payment. It's not personal liability of the debtor. Let's take a simpler claim. A employee driver for a municipal entity negligently runs a red light. So the employee driver is liable under negligence law to the person injured by running the red light. The employer would also be on the hook potentially for indemnification of its employee or respond to its superior liability. So what would happen if the lawyer in that scenario files for bankruptcy? As I understand it, your position is that the indirect respondee at superior liability would be discharged. Any indemnification duty would be discharged. But also the victim's claim against the driver personally would be discharged. That's how I'm understanding your argument. The plaintiffs here have a claim, meaning a right to payment, from the officials and officers that they sued. That's correct. That would be their direct claim. What Salgado does is it recognizes that you have to look beyond the labels because otherwise you'd be permitting plaintiffs to reach into the debtor's wallet. I'm sorry to interrupt you but I'm not sure I heard an answer to my question. Would the claim against the driver in the scenario I gave you for his personal negligence in running the red light be discharged by the discharge in bankruptcy of the driver's employer, municipal employer? Against the employer? No, the claim of the victim against the driver. What happens to that when the municipal employer is discharged from bankruptcy? Then I think it would be discharged, yes. Why? Well, it is a direct claim against the driver so it would be subject to discharge because I assume in this scenario that the driver is the debtor? No, the same scenario we have here. The debtor is the municipality. Its employee runs a red light. The employee is directly liable to the victim who the employee ran over in the red light. The municipality is indirectly liable on a respondeat superior theory. Also may have some obligation and identification obligation towards its employee if it wasn't an independent frolic. Municipality files bankruptcy. As I understand your whole argument here is that discharge in bankruptcy would in ordinary course release as well any claims of the victim against the driver personally? Understood, yes. So yes, analogous to this instance, any identification responsibilities by the claim. But are you saying that the victim would have no claim against the driver after the discharge? No, there would be a direct claim against the driver. Then how is this different? Because this is, because essentially as this court recognized in Salgado, there is something beyond the label. The substance of it is that if in this scenario law 9 applied. My question is since you've agreed that the claim against the driver would survive the bankruptcy discharge of any claims against the municipal employer, I'm having trouble seeing how this situation is any different. You have, instead of the victim of the driver, you have a creditor who was harmed by assault and battery, they allege. You have an employee of the municipality who is directly, personally liable and you have the municipality being discharged. How do you differentiate between the two situations so that your concession regarding the survival of the driver's claim of the victim's claim against the driver would not lead to the same result here? Well, I have to take back my concession. I didn't understand the hypothetical. I apologize. There would be an indirect claim against... You're saying you... There are essentially two types of claims. There's an indirect claim against... Are you retracting your agreement that the claim against the driver would survive? Right, that's right. So now you're saying that the claim against the driver would be discharged. The claim against the driver would be subject to discharge, but there would also be an indirect claim against the municipality or the employer, too, under the reality that the municipality is stepping in to defend and indemnify. What's the basis on which you say the claim against the driver, personally, would be discharged? Are you assuming that in the municipality hypothetical that the confirmation order has the words employees and officers like this one does, or does that matter? That's right. No, it doesn't matter. That's essentially the textual hook. And is that the... That's the hook that you're saying that it would be discharged against the employee? Okay, I just want to ask that question. I didn't mean to interrupt Judge Chiodo. It's clear, isn't it, that the victim would have a claim but for bankruptcy against the driver? Yes, there would be a claim. I agree with that. And that's true even if there is a claim against the municipality. There would be an indirect claim against the municipality even if there's a... So, for example, if the driver filed bankruptcy, he couldn't claim that he had... That there was no claim against him. That bankruptcy by the driver would actually discharge a claim. I think that's right, but of course, this is the bankruptcy of the employer, of the municipality. Precisely. So therefore, why doesn't that claim against the driver personally survive? Precisely because of the reasoning and the Delgado case. Because these types of claims, the court should look to the substance of it and what essentially happens with the payment and indemnification. And the economic reality is that these parties are trying to reach into the debtor's wallet. And if they are trying to do that effectively, then that debtor's wallet comes with bankruptcy protections. They wanna be able to reach into the wallet without the protections in bankruptcy. In drawing this straight line that you draw from Delgado to this case, how do you suggest we address the intervening decision by the Supreme Court in Purdue Pharma? Which is, I understand it says among other things that the discharge of a non-debtor by a non-debtor creditor is... What is the word they use? Radical? I think so, yeah. Doesn't that cast some doubt on the straight line you draw between Delgado involving a stay, in this case, involving the radical step of discharging a claim against a non-debtor? Well, I don't... This is not a third party release case, so this is not Purdue Pharma. The reason is that under Delgado, these are claims against the debtor itself. They're indirect claims. But it is a discharge of a claim against the non-debtor as well. Well, they're not capital D debtors, but of course, the confirmation order is referenced to employees and official has to do some work, and the other side, and Judge Swain also admit that of course... But if you put it in the order or not, you're then exercising what the Supreme Court has told us is a radical power. There's no non consensual third party release here if these claims are indirect claims against the Commonwealth's FISC. If I may finish. Please. Purdue Pharma said that the claims against the Sackler family were third party claims, and the question was whether they could be non consensually released by a plan. That's not the question here. The question is first, who's debt is it? So if Purdue Pharma doesn't come into play at this stage. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellees please introduce himself on the record to begin? Good morning, Your Honors. Steven Lanzer, Record for the Appellees. In reference to what Brother Counsel just mentioned, the reference to indirect claims in the confirmation order naturally covers official capacity lawsuits, which although are nominally against an officer, they are after... They are the legal liability of the government. The difference would be individual capacity lawsuits, which are not enforceable versus the Commonwealth because they are the legal liability of the individual officer. So you would agree with the Title III Court that all personal capacity cases are categorically exempt from discharge? I would, Judge, because individual officers are non debtors. They are not parties to the Title III case. So in effect, a discharge of 1983 claims would constitute a non consensual third party release, which is something that the plan itself prohibits. How do you suggest we deal with Zalgado? Because Zalgado holds that a third party claim, in effect, can be a claim against the debtor, at least for purposes of discharge. So as I read Zalgado, it applied the stay not just to an action against the debtor, but proceeding in an action against the debtor's employees. Yes, Your Honor, that's correct. The difference, Zalgado is distinguished because it has to do precisely with the automatic stay. This Court's decision stated expressly that it was for automatic stay purposes. And the stay and the discharge are two very functionally different procedures in bankruptcy. The stay is temporary and prophylactic. It's designed to give breathing room while the bankruptcy court looks into the matter versus the discharge, which is permanent and final and releases claims in perpetuity. So it's reasonable for it to be construed much narrower than the automatic stay. And Zalgado never mentions the bankruptcy court's discharge provision, section 524, because it was exclusively a decision for automatic stay purposes. So what do you do with the words employees and officers? It seems that it doesn't say that, doesn't seem to limit it to that. And then you have the economic reality that in the vast majority of cases involving any state or the Commonwealth of Puerto Rico, there is defense and indemnification, even though in some of those states and in Puerto Rico, the Secretary of Justice does have some discretion. Well, indemnification under Law 9, Puerto Rico, the economic impact is really in the hands of the Commonwealth. They could simply say no to those claims and there would be zero impact. So it's a speculative argument to claim that this pressure to indemnify somehow creates legal liability, right? Bankruptcy proceedings turn on who is liable for a claim, not who may someday decide to pay it. So however much pressure there is to indemnify, it's still a discretionary post-judgment operation. And are you saying that that doesn't in any way help figure out what is meant by employees and officers? No, I don't. I think what is meant by employees and officers is clear. It naturally covers official capacity lawsuits, which would also answer the reference to indirect claims. But it doesn't say that. And we have a long history of individual claims in civil rights cases. I mean, that's the way it works when you're looking for money. Yes, but the state provision in Section 922 expressly mentions actions against officers and the discharge provision in Section 524 expressly limits it to personal liabilities of the Commonwealth. That language is there for a reason and there is a distinction between these two statutes that were written in different languages by Congress and for different purposes. I'll just continue if there's no more questions. It's a big leap to say that every claim that is subject to the automatic stay is also dischargeable, right, for three reasons. First, we already mentioned Section 524 of the Bankruptcy Code has a limiting provision which stops discharge at the personal liabilities of the debtor. Second, the Bankruptcy Court's definition of claim is being asked to do too much in the Board's position. It's common for Congress to generally define a concept at the outset of a codified set of laws and then further downstream act upon it and impose legal consequences on it in certain circumstances. And that's what Section 524 does. It says not every claim is dischargeable, right? It narrows the universe of dischargeable claims to personal liabilities of the debtor. The right of action also informs the nature of the claim. As we have mentioned, Section 1983 claims are against individual officers in their personal capacity. They are not enforceable against the Commonwealth and plaintiffs in a 1983 claim have no right to recover from Commonwealth funds. So they are not personal liabilities of the debtor. What would your position be if the Secretary of Justice issued a blanket declaration that there would be defense and indemnification with respect to all of these claims, these individual capacity claims for the time period at issue? Well, that would be a situation similar to the facts in De Ocampo, which the indemnification statute required, generally required indemnification, not in Puerto Rico's case in which it's discretionary. And my answer to that would be the same as the Ninth Circuit Courts and the Title III Court in our case, is that doesn't convert the claim into a legal liability, a personal liability of the Commonwealth. Indemnification is an intramural arrangement between the individual defendant and the government, and it has nothing to do with the plaintiff. So it cannot affect the plaintiff's claim. I would also add that the Board's position does, in effect, amount to a non-consensual third-party release, which is something that the plan prohibits. It seeks to extinguish claims against individual officers who are non-debtors who have never filed for bankruptcy, and discharging them would release those non-debtors from liability. That's the textbook definition of a third-party release. So to read indirect claims in the confirmation order as allowing for that would contradict the plan, which, as the Title III Court's findings of explained, does not allow non-consensual third-party releases. And it's also worth mentioning, as the Title III Court did in its opinion order, that the Board had an opportunity during the confirmation hearings on the plan to request the Court to present evidence and request the Court to make findings of necessity to allow for third-party releases, and it did not do so. It chose not to do so. So I cannot ask now that the Court grant the same thing by interpretation of the statute, what it did not seek at confirmation from the Title III Court. Unless there are any more questions, I would just finish by saying that, you know, the question here is whether the Commonwealth's bankruptcy can discharge a non-debtor's individual responsibility for constitutional violations. As we've mentioned, Section 524 of the Bankruptcy Code doesn't allow it. The plan of adjustment did not attempt to prohibit third-party releases, and Salgado doesn't authorize it because it's explicitly in the context of the automatic state. The Title III Court got this right, and the judgment should be affirmed. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has a two-minute rebuttal. Thank you. Lucas Kowalczyk on behalf of the Oversight Board. I just have three quick points. First, on the question on the argument that the stay is narrower, and that's why the Salgado decision does not control, the stay can be broader I'm sorry, that the stay is broader. The stay can be broader in some respects, that's true, because it applies to categories other than claims, but Salgado did not rely on any of those other categories. It relied on the provision of claim. And of course, what the other side is asking this Court to do is to do something quite drastic, which is to give the exact same word in the statute to different meanings, depending on the procedural context, which would defy congressional intent and basic principles of statutory construction. On the section 524, that it narrows the universe of claims or discharge, section 524 is a red herring. It plays no role in this appeal. The plaintiffs are taking the phrase personal liability and inserting it into the dispositive test as to what makes a claim. No court has ever endorsed that, and the Supreme Court has explained that that phrase does not do that work. That's just wordplay, and it's wrong. And finally, I think that the rule proposed by the other side would lead to somewhat of an absurd result, because under the rule, the claims in the Salgado case would not be subject to discharge, even though this Court has already said that those are indirect claims against the Commonwealth itself. But doesn't it depend on what the plan said? The plan and the confirmation order reach employees and officials in any capacity, yes. Just like section 922 reaches officers. Those two provisions serve the same anti-evasion function, that you cannot simply sue an officer or an official and get around the stay or get around the discharge to reach into the debtor's pocket. So I think the rule that the other side proposes shows that inconsistency cannot be correct, that a claim can be two different things when the Congress defined in one provision for the entire Code. Thank you. That concludes argument in this case.